IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFRIKA N. HICKS )<br>)<br>    **Plaintiff** )<br>)<br>v. )<br>)<br>)<br>)<br>**THE OFFICE OF THE SERGEANT** )<br>**AT ARMS FOR THE UNITED** )<br>**STATES SENATE et al.** )<br>)<br>    **Defendants** )<br>)<br>)<br>) | Case No: 1:07-cv-02186 (RWR) |

**PLAINTIFF'S NOTICE OF FILING CORRECTED COMPLAINT**

Pursuant to the Court's minute order dated May 6, 2008, the Plaintiff hereby files the attached Corrected Complaint, which includes the corrected caption, reflecting the correct name for Defendant Office of the Sergeant at Arms for the United States Senate.

        Respectfully Submitted,
        ALDERMAN, DEVORSETZ & HORA, PLLC


        /s/ Leslie D. Alderman III (D.C. #477750)
        1025 Connecticut Ave., NW
        Suite 615
        Washington, DC 20036
        Tel: 202-969-8220
        Fax: 202-969-8224

        Counsel for the Plaintiff

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFRIKA N. HICKS )<br>18850 Broken Oak Rd. )<br>Boyds, Maryland 20841 )<br>  )<br>     Plaintiff )<br>  v. )<br>  )<br>OFFICE OF THE SERGEANT )<br>AT ARMS FOR THE UNITED )<br>STATES SENATE To be Served )<br>on Office of Senate Chief )<br>Counsel for Employment )<br>PO Box 77053 )<br>Washington, D.C. 20013 )<br>  )<br>and )<br>  )<br>KIMBALL B. WINN )<br>905 Parker Ave )<br>Falls Church, Virginia 22046 )<br>  )<br>and )<br>  )<br>RICK KAUFMAN )<br>1703 Treehouse Court )<br>Annapolis, Maryland 21401 )<br>  )<br>     Defendants ) | Civil Action No. |

**CORRECTED ORIGINAL COMPLAINT (TRIAL BY JURY REQUESTED)**

For her Complaint against the Defendants (the Senate Sergeant at Arms ("SAA"), Kimball Winn ("Winn") and Rick Kaufman ("Kaufman"), Plaintiff Afrika N. Hicks, by and through her undersigned attorneys, avers the following, based on information and belief and/or the Plaintiff's personal knowledge.

**JURISDICTION AND PARTIES**

1. Plaintiff invokes the jurisdiction of this Court pursuant to The Congressional Accountability Act of 1995 (2 U.S.C. §1408 (a)), 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

2. This is an action authorized and instituted pursuant to The Congressional Accountability Act, (2 U.S.C. 1301 *et seq*.), Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. sections 2000e, *et seq*.), and the common law.

3. The unlawful employment practices alleged in this Complaint were committed in the District of Columbia.

4. The Plaintiff is African American and a resident of the State of Maryland. She was employed by the SAA until her unlawful termination in February 2007.

5. The Defendant SAA, the Plaintiff's former employer, is a United States Congressional Agency located in the District of Columbia.

6. The Defendant Kimball Winn is a resident of the State of Maryland.

7. The Defendant Rick Kaufman is a resident of the State of Maryland.

8. Plaintiff has satisfied all administrative and judicial prerequisites to the institution of this action. The Plaintiff filed a timely Request for Counseling before the Office of Compliance raising the violations of the Congressional Accountability Act complained of here. The Plaintiff participated in the Office of Compliance Counseling and Mediation sessions; and the Plaintiff files this Complaint after the expiration of 30 days, and before the expiration of 90-days, following the receipt of the notices of the termination of mediation.

## BACKGROUND FACTS

9. Ms. Hicks reasserts and reavers each of the above paragraphs as if they were specifically restated here.

10. Prior to her termination, Ms. Hicks was a Telecommunications Operations Specialist with the Senate Sergeant at Arms.

11. In December 2004, Ms. Hicks exercised her rights under the Family Medical Leave Act (FMLA) as applied to the Senate Sergeant of Arms by the Congressional Accountability Act at 2 U.S.C. § 1312. She returned from her FMLA leave in March 2005.

12. In July 2006, Ms. Hicks protested a discriminatory email that had been circulated around her office. The email was very negative and insensitive toward Mexico, Mexicans and to immigrants to the United States. Specifically, Ms. Hicks' colleague recommended digging a mote along the border with Mexico, and filling it with alligators in order to "solve some of the troubles we've been having in the good old USA." Ms. Hicks brought the email to the attention of her supervisor, Mary Lihou, who had failed to take any action in response to the offensive email.

13. In August 2006, in response to a new policy requiring employees to be "on call" over the weekends, Ms. Hicks requested that she be given a religious accommodation so that she could avoid being on-call on Sundays, so that she could continue to honor important religious observances such as attending church.

14. In response to her request for an accommodation, Ms. Hicks met with one of the SAA's personnel specialists, and soon thereafter (also in August 2006), Ms. Lihou

    informed Ms. Hicks that one of her coworkers had agreed to substitute for her on the days that Ms. Hicks' on-call obligation fell on a Sunday.

15. Despite her assurance to Ms. Hicks, at the end of August or early September 2006, Ms. Lihou instructed Ms. Hicks that she was required to secure her own substitute for those Sundays when she was to be on-call.

16. In the performance evaluation for the period ending September 2006, Ms. Lihou rated Ms. Hicks as not having met the standards for her position. The evaluation included negative remarks about Ms. Hicks' attention to detail, ability to meet deadlines, teamwork, and her receptiveness to criticism. The evaluation also indicated that Ms. Hicks had been responsible for a notorious error related to a Senator's telephone service. These notations were groundless, as exemplified by the fact that the error had been made during the time that Ms. Hicks was on FMLA leave. Nevertheless, Ms. Lihou failed to either correct the evaluation or to provide details to support the negative remarks.

17. The September 2006 evaluation imposed a number of assignments and/or goals that Ms. Hicks had to complete or meet in order improve her performance to "Acceptable." It also established a scheme of quarterly review periods with objectives to track her improvement.

18. On or about October 27, 2006, Ms. Lihou gave Ms. Hicks a counseling memorandum charging that Ms. Hick's customers had complained about her services. On information and belief, these complaints were either fabricated or tremendously exaggerated.

4

19. On November 1, 2006, Ms. Hicks requested FMLA leave in order to undergo and recover from a medically necessary surgery, which was to occur in December 2006.

20. On December 10, 2006, Ms. Hicks transmitted a letter to the Sergeant at Arms, William Pickle. In her letter, Ms. Hicks explained that Ms. Lihou's treatment of her was, among other things, retaliatory and indicative of disparate treatment.

21. On February 13, 2007, in a memo that summarized her findings from the first quarterly review, Ms. Lihou indicated that Ms. Hicks "has only made sporadic improvements and not the consistent improvements that are necessary …"

22. On or about February 27, 2007, Ms. Lihou instructed Ms. Hicks to meet with Rick Kaufman (the Division Manager and Ms. Hicks' second-level supervisor) and Kimball Winn (the Director of IT Support Services and Ms. Hicks' third-level supervisor) in Ms. Lihou's office. Mr. Kaufman and Mr. Winn issued Ms. Hicks a termination notice with an immediate effective date.

23. Once Ms. Hicks had gathered her own belongings, she returned to Ms. Lihou's office to turn over her Agency equipment, keys and identification badge to her supervisors. In the process of turning these items over, Ms. Hicks requested a receipt documenting the fact that she had returned the items. Mr. Winn refused to give her a receipt. Ms. Hicks then indicated that she would go to the Human Resources department to turn over the items so that she could get a receipt. At that time, Mr. Winn and Mr. Kaufman attempted to physically restrict Ms. Hicks' departure from the office and – once she managed to exit the internal office – the office suite. This included pushing Ms. Hicks against the wall and physically grabbing and restraining her.

24. Ms. Hicks' husband, Nikkol Hicks, who is a Capitol Police Officer, was present to witness some of Mr. Winn's and Mr. Kaufman's assault. At one point, Officer Hicks told Mr. Winn that he was committing an assault. At that time, Mr. Winn accused Officer Hicks of being in the office improperly. On information and belief, Mr. Winn later falsified a report against Officer Hicks, which lead to an Internal Affairs investigation against Officer Hicks.

25. The Plaintiff's colleagues who were not members in the same protected classes (or combination thereof) were not subjected to the same or similar adverse employment actions as those referenced above.

## COUNT I: RELIGIOUS DISCRIMINATION

26. Ms. Hicks repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

27. The SAA failed to provide a reasonable religious accommodation to Ms. Hicks (e.g. that she would not be required to be on-call on Sundays). Instead, the SAA retracted an <u>agreed</u> accommodation (that an identified employee would substitute for Ms. Hicks on her on-call Sundays). Thereafter, the SAA disciplined Ms. Hicks for failing to accept on-call duty on Sundays and used that purported failure to substantiate her termination. In so doing, the SAA discriminated against Ms. Hicks based on her religious beliefs in violation of 2 U.S.C. §1311 (a)(1).

28. As a result of the unlawful discriminatory and retaliatory conduct discussed above, Ms. Hicks suffered disciplinary actions, which, in part, lead to her termination. The unlawful discrimination caused Ms. Hicks to suffer economic damages in addition to severe emotional pain and suffering.

### COUNT II: RETALIATION BASED ON FMLA PARTICIPATION

29. Ms. Hicks repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

30. In an attempt to interfere with, restrain, or deny the exercise of or the attempt to exercise her rights to FMLA leave in December 2006, the SAA, among other things, issued her an "unacceptable" rating on her first quarterly review period – specifically mentioning absences for which Ms. Hicks was covered by FMLA, and ultimately terminated her. In so doing, the SAA violated 2 U.S.C. § 1312, which extends FMLA protection, including that found in 29 U.S.C. § 2615(a)(2) to employees such as the Plaintiff.

31. As a result of the unlawful discriminatory and retaliatory conduct discussed above, Ms. Hicks suffered disciplinary actions, which, in part, lead to her termination. The unlawful discrimination caused Ms. Hicks to suffer economic damages in addition to severe emotional pain and suffering.

### COUNT III: RETALIATION BASED ON PROTECTED EQUAL EMPLOYMENT OPPORTUNITY ACTIVITY

32. Ms. Hicks repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

33. In retaliation against Ms. Hicks for her protected Equal Employment Opportunity Activity, including but not limited to 1) her request for a reasonable religious accommodation, and 2) her complaints of prohibited discrimination (e.g., her letter to the Sergeant at Arms – in which she complained of disparate and retaliatory conduct - and her efforts to encourage her supervisor to address the discriminatory email

circulated by a co-worker), the SAA gave Ms. Hicks an "Unacceptable" performance evaluation, disciplined her, and ultimately terminated her.

34. As a result of the retaliatory conduct discussed above, Ms. Hicks suffered economic damages in addition to severe emotional pain and suffering.

## COUNT IV: TORT CLAIMS AGAING DEFENDANT WINN AND KAUFMAN

35. Ms. Hicks repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

36. Defendants Winn and Kaufman, by and through their actions discussed herein, committed various tortious actions against the Plaintiff, including assault, wrongful imprisonment, and intentional infliction of emotional distress. These actions, alone and/or in combinations with their misuse of the Capitol Police internal complaint procedures (by which, on information and belief, they had an internal affairs investigation launched against Officer Hicks), resulted in the intentional infliction of emotional distress upon the Plaintiff.

37. As a result of Defendants Winn and Kaufman's tortious conduct, Ms. Hicks has suffered severe emotional pain and suffering.

WHEREFORE, Plaintiff prays that this Court: (i) declare that the employment practices complained of in this Complaint are unlawful in that they violate the Congressional Accountability Act and the Civil Rights statutes made applicable to the SAA therein; (ii) permanently enjoin the Defendant SAA and its agents, officers and employees from engaging in all practices found by this Court to be in violation of the Congressional Accountability Act; (iii) order the Defendant SAA to make the Plaintiff whole by paying Plaintiff economic and compensatory damages in an amount to be determined at trial; (iv)

order Defendants Winn and Kaufman to pay Plaintiff compensatory and exemplary damages to compensate her for her emotional pain and suffering and deter them from similar behavior in the future; (v) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant SAA to file such reports as the Court deems necessary to evaluate such compliance; (vi) order the Defendant SAA to pay Plaintiff's costs and expenses and reasonable attorneys' fees in connection with this action; and (vii) grant such other and further relief to the Plaintiff as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

        Respectfully Submitted,
        ALDERMAN, DEVORSETZ & HORA PLLC


        /s/Leslie D. Alderman III (D.C. # 477750)
        1025 Connecticut Ave., NW
        Suite 615
        Washington, DC 20036
        Tel: 202-969-8220
        Fax: 202-969-8224
        lalderman@adhlawfirm.com

        Attorney for the Plaintiff