## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFRIKA N. HICKS ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | **Case No: 1:07-cv-02186 (RWR)** |
| ) | |
| ) | |
| THE OFFICE OF THE SERGEANT ) | |
| AT ARMS FOR THE UNITED ) | |
| STATES SENATE et al. ) | |
| ) | |
| **Defendants** ) | **May 14, 2008** |
| ) | |
| ) | |
| ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO SUBSTITUTE THE UNITED STATES AND DISMISS COUNT IV OF THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

Defendants have moved to substitute the United States as Defendant for Defendants Kimball Winn (Winn) and Rick Kaufman (Kaufman) pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("The Westfall Act"), 28 U.S.C. § 2679 (2000).  Now comes the Plaintiff, who states as follows for her Opposition to that Motion:

Defendants Winn and Kaufman's conduct was not "of the kind they were employed to perform;" nor was it foreseeable by the employer. Instead, it was violent and unprovoked, and it actually thwarted the Office of the Sergeant at Arms for the United States Senate's ("OSAA") interests.  For these reasons, and because the Defendants' motion was improvidently filed as a motion to dismiss, the Defendants' motion to dismiss should be denied outright.  In the alternative, the Plaintiff should be granted discovery, and the issue of whether Winn and Kaufman were acting within the scope of their

employment should be decided after discovery, by summary judgment or an evidentiary hearing.

## FACTS

On February 27, 2007, Ms. Hicks was called into her supervisor's office where Rick Kaufman, the Division Manager (Ms. Hicks' second-level supervisor) and Kimball Winn, the Director of IT Support Services (Ms. Hicks' third-level supervisor) issued her a notice of termination. As requested, Ms. Hicks returned to her office and gathered her personal belongings.  Oblivious to the fact that she had been terminated, Ms. Hicks' husband, a Capitol Police Officer, stopped by to take her to lunch.  She asked him to carry her personal items and to wait for her outside the office suite.  Ms. Hicks then returned to the office where Kaufman and Winn were and began to turn over her government property.

As she was turning over the government property, Ms. Hicks asked Winn and Kaufman for a receipt demonstrating that she had returned the items.  Winn and Kaufman refused.  Ms. Hicks advised them that, in light of their refusal, she would return the property to the Human Resources Department so that she could obtain a receipt for their return. She then began to exit the office.

Winn and Kaufman became inexplicably physical.  They first attempted to stop Ms. Hicks from leaving the office by restraining her and blocking the door. Once she managed to escape from the inner office, Winn and Kaufman followed her to the office suite's outer door, where the scene repeated itself, only more violently, with Winn and Kaufman pushing Ms. Hicks against the wall and restraining her more feverishly.

The second episode occurred in the presence of Ms. Hicks' husband who came back into the office suite as a result of the commotion. When Officer Hicks cautioned Winn and Kaufman that they were committing an assault, Winn and Kaufman accused him of acting inappropriately. Later, Winn and Kaufman lodged false reports against Officer Hicks, which led to an Internal Affairs investigation against him.[1]

Ms. Hicks brought this civil action, among other reasons, to recover from Winn and Kaufman for their tortious conduct, which included both episodes of assault and wrongful imprisonment and the false allegations they filed against Ms. Hicks' husband.

If the Court substitutes and replaces the United States as Defendant in the place of Winn and Kaufman, then Ms. Hicks will be left without recourse for their outlandish conduct against her. This is because, as the Defendants correctly argue, the United States has not waived immunity for claims of, or arising from, torts such as assault and wrongful imprisonment. *See* 28 U.S.C. § 1675(a).

This is exactly the kind of case about which Justice Ginsburg wrote, on behalf of the U.S. Supreme Court, in *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995):

> In the typical case, by certifying that an employee was acting within the scope of his employment, the Attorney General enables the tort plaintiff to maintain a claim for relief under the FTCA, a claim against the financially reliable United States. In such a case, the United States, by certifying, is acting against its financial interest, exposing itself to liability as would any other employer at common law who admits that an employee acted within the scope of his employment.
>
> The situation alters radically, however, in the unusual case-like the one before us-that involves an exception to the FTCA. **When the United States retains immunity from suit, certification disarms plaintiffs. They may not proceed against the United States, nor may they pursue the employee shielded by the certification**. In such a case, the

---

[1] Officer Hicks has been fully cleared of any wrongdoing.

certification surely does not qualify as a declaration against the Government's interest: it does not expose the United States to liability, and it shields a federal employee from liability.

But that is not all. **The impetus to certify becomes overwhelming in a case like this one**, as the Attorney General, in siding with petitioners, no doubt comprehends. If the local United States Attorney, to whom the Attorney General has delegated responsibility, refuses certification, the employee can make a federal case of the matter by alleging a wrongful failure to certify. The federal employee's claim is one the United States Attorney has no incentive to oppose for the very reason the dissent suggests: Win or lose, the United States retains its immunity; hence, were the United States to litigate "scope of employment" against its own employee-thereby consuming the local United States Attorney's precious litigation resources-it would be litigating solely for the benefit of the plaintiff. Inevitably, the United States Attorney will feel a strong tug to certify, even when the merits are cloudy, and thereby "do a favor," both for the employee and for the United States as well, at a cost borne solely, and perhaps quite unfairly, by the plaintiff.

*Id.* at 427-28 (emphasis added) (internal citations omitted).

## LAW AND ARGUMENT

### A.    Motion to Dismiss is Inappropriate; D.C. Law Requires Motion for Summary Judgment

The Defendants should have filed their motion as one for summary judgment on the issue of whether Winn and Kaufman could be maintained as individual Defendants in this case. Since the Defendants' motion is not one that can be converted to a motion for summary judgment (*see* Rule 12(d)), the motion should be denied.

In *Lamagno*, the Court held: "The Attorney General's Certification that a federal employee was acting within the scope of his employment – a Certification the executive official, in cases of the kind at issue, has a compelling interest to grant – does not conclusively establish as correct the substitution of the United States as defendant in place of the employee." *Id.* at 433. Instead of conclusively establishing scope of employment, "the Attorney General's certification … constitute[s] *prima facie* evidence

that the employee was acting within the scope of his employment." *Counsel on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (quoting *Lamagno* and citing *Kimbro v. Velten*, 30 F.3d 1501, 1509 (D.C. Cir. 1994)).

The government argues that "a plaintiff can overcome this *prima facie* evidence only if he or she proffers specific facts rebutting the certification." Def's Memorandum at 3 (citing *Ballenger*, 444 F.3d at 662). The boilerplate Certification issued in this case should not even be entitled to *prima facie* evidentiary weight and should be vacated instead. The certificate cites neither evidence nor the basis for a reasoned conclusion sufficient for the Plaintiff or the Court to test that conclusion. Instead, the certificate, which merely reads that the designee has, "read the complaint in the above-captioned civil action," is marked by the neon-light-caveat that the Certification is made merely: "on the basis of the information now available to me with the respect to the incident."[2] Clearly the Certification was not the product of any reasoned analysis; as such, the degree of evidentiary weight given to it should be proportionate to the consideration (or lack thereof) that apparently went into it.

The dispute over the sufficiency of the designee's boilerplate and naked conclusion can and should be addressed at a later date, specifically the summary judgment procedure used under the law of this Circuit.

In *Kimbro v. Velten*, 30 F.3d 1501 (D.C. Cir. 1994) (*cert denied* 515 U.S. 1145 (1995)) (cited with approval in *Ballenger*, 444 F.3d at 662), the D.C. Circuit endorsed the

---

[2] Justice Ginsburg, in *Lamagno*, appears to have likewise bristled at the identically worded certificate at issue in that case, writing: "The certification, as is customary, stated no reasons for the U.S. Attorney's scope-of-employment determination." *Id*. at 421.

use of a summary judgment proceeding after discovery – when a dispute over Certification exists:

> The Third Circuit describes the certification as entitled to *prima facie* effect, but treats the district court hearing as a summary judgment motion, **which obliges the plaintiff to come forward <u>after</u> reasonable discovery with evidence supporting his allegations** both as to scope and as to the merits. If there is a material dispute as to the scope issue the district court must resolve it at an evidentiary hearing. **We agree with this procedure**[.]

*Stokes v. Cross*, 327 F.3d 1210 (D.C. Cir. 2003) (emphasis added) (cited by the government at p. 3 of its memorandum) also specifically reiterates a plaintiff's right to discovery when disputing a designee's Certification: "**Because the plaintiff cannot discharge this burden without some opportunity for discovery**, the district court may permit limited discovery and hold an evidentiary hearing to resolve a material factual dispute regarding the scope of the defendant's employment." (*Id.* at 1214) (emphasis added).[3]

*Rasul v. Myers*, 512 F.3d 644, 662 (D.C. Cir. 2008) takes a perhaps less permissive approach to discovery holding that it is only available if the plaintiff alleges facts that, if true, would establish that the defendant's actions were outside the scope of employment) (*citing Stokes*, 327 F.3d at 1216). The portion of *Stokes* cited in *Rasul* clarifies that a plaintiff is "not required to allege the existence of evidence he might obtain through discovery," but instead is "merely required to plead sufficient facts that, if true, would rebut the certification." *Stokes* 327 F.3d at 1216.

---

[3] Defendants make no mention of these cases in their motion to dismiss.

Had the Defendants properly filed this motion as a motion for summary judgment, then, in the absence of facts contained in the initial pleadings or opposition sufficient to rebut the Certification, the Plaintiff could move for discovery pursuant to Rule 56(f), which reads:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: 1) deny the motion; 2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or 3) issue any other just order.

The Plaintiff respectfully submits that had the Defendants properly filed this motion as a Motion for Summary Judgment, the vehicle for Plaintiff to seek discovery would be clear and consistent with *Rasul, Stokes* and the Federal Rules of Civil Procedure. Since this motion was improvidently filed as a motion to dismiss (*see* Def's Motion at 1)[4], the motion should be denied.[5]

**B.    In the Alternative, the Court Should Deny the Defendants' Motion as a Matter of Law**

District of Columbia law governs whether Winn and Kaufman were acting within the scope of their employment. On this point, the parties are in agreement. See Def's Motion at 4, citing *Ballenger*, 444 F.3d at 663. The District Columbia Court of Appeals has adopted the definition of "scope of employment" used in the Restatement (Second) of Agency (1957), section 228. The Restatement reads, in full:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>     a.   It is of the kind he is employed to perform;

---

[4] The Defendants' motion indicates that it is filed pursuant to Rules 7(b), 12(b)(1) and 12(h)(3).

[5] Unlike a motion filed pursuant to rule 12(b)6 or 12(c), this motion cannot be converted into a motion for summary judgment. *See* Rule 12(d).

      b.  It occurs substantially within the authorized time and space limits;

      c.  It is actuated, at least in part, by a purpose to serve the master, and

      d.  If force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.[6]

According to the District of Columbia Court of Appeals, in order for intentional torts, of the sort at issue here, to be attributable to the employer, the tort must have been **both actuated, at least in part, out of a desire to serve the employer and foreseeable**:

> The tort must be actuated, at least in part, by a purpose to further the master's business and not be unexpected in view of the servant's duties. The first criterion is often called 'intent' or 'purpose' and excludes from the scope of employment all actions committed solely for the servant's own purposes. The latter criterion is loosely called 'foreseeability' and implies that the tortious act must be incidental to conduct the employer has authorized.

*Johnson v. Weinberg*, 518 A.2d 985, 990 (D.C. 1986) ("*Weinberg II*") (internal quotations omitted).

With respect to the "intent/purpose" factor, the *Weinberg II* Court indicated that "[t]he present trend is to extend liability for intentional torts to situations where the employer provides a peculiar opportunity and incentive for such loss of temper**, as where an argument is likely by virtue of the servant's duties, and the conduct is wholly or partially in furtherance of the master's business**." (emphasis added).

The Court of Appeals opined that the intent/purpose and foreseeability factors are co-equal, both of which must be met in order for intentionally tortious conduct to be attributable to the employer:

---

[6] The Defendants did not include Section 228(2) in their citation to the Restatement, despite the obvious import of that section to this case.

8

> When an intentional tort is 'the outgrowth of a job-related controversy,' the intent or purpose criterion is satisfied, but … **the employer can only be held liable if the particular tortious act also satisfies the foreseeability requirement**. Thus, when a servant commits a tort during a dispute over the conduct of the employer's business, the employer will be able to avoid liability only if the jury finds the tort could not be expected under the circumstances, not because the dispute out of which it arose was insufficiently related to the business.

*Id.* at 992 (emphasis added).

While the cases to which the Defendants cite would indicate an extreme inclusiveness with respect to scope of employment, a close look at the primary cases Defendants relied upon belie that initial conclusion. Instead, of endorsing **the results**, the D.C. Courts have endorsed **the process** used to determine the results.

*Lyon v. Carey*, 533 F.2d 649 (D.C. Cir. 1976), cited by the Defendants at page 5, is the case in which a delivery company was held liable for a rape committed by its deliveryman. There the D.C. Circuit held that the question of whether the rape was in the scope of the deliveryman's employment was a question for the jury to decide:

> [I]t is … a question of fact for the trier of fact, rather than a question of law for the court, whether the assault stemmed from purely and solely personal sources or arose out of the conduct of the employer's business; and the trial judge so instructed the jury. … It is a jury's job to decide how much … [,]if any[,] of the damages were caused by actions, including sexual assault, which stemmed from job-related sources rather than from purely personal origins.

*Id.* at 655.

It is crucial to note that *Lyon* addressed the propriety of the District Court's grant of a directed verdict, which imposes a standard that we do not face in the case at bar.[7] As

---

[7] *Klein v. District of Columbia*, 409 F.2d 164 (D.C. Cir. 1969), a contemporary of *Lyon*, explained the standard for reviewing a directed verdict at that time as follows:

such, the *Lyon* court did not endorse the decision that the rape was conducted in the scope of employment as a matter of law. Instead, it endorsed the process used in making that determination, reiterating that the question was one for the jury.

*Johnson v. Weinberg*, 434 A.2d 404 (D.C. 1981) (*Weinberg I*) (cited by Defendants at p. 5) was decided in the same way, under the directed-verdict standard: "A directed verdict is only appropriate where the probative facts are undisputed and where **reasonable minds can draw but one inference** from them." *Id.* at 407 (emphasis added).

In *Weinberg I*, the Court of Appeals held: "Whether the assault ... was the outgrowth of a job-related controversy or simply a personal adventure of ... (Boyd's), was a question for the jury [and here] there is certainly evidence from which a reasonable person could find that the shooting was the outgrowth of a job-related controversy." *Id.* at 408. As the D.C. Circuit did in *Lyon,* in *Weinberg I*, the D.C. Court of Appeals only endorsed the process by which the decision was made and not scope of employment decision itself: "Reasonable minds could find that the shooting arose out of and was related to Boyd's employment. Accordingly, it was a question of fact for the jury, rather than a question of law for the court, and the court committed error by taking the question from the jury." *Id.* at 409.

    *i.*       ***Winn and Kaufman's Actions Fail the Purpose/Intent Test***

---

        On appeal of a directed verdict, this court must determine whether, taking the evidence most favorable to the plaintiff, 'reasonable men might differ,' or whether 'no reasonable man could reach a verdict in favor of the plaintiff.'

*Id.* at 167.

10

In *Weinberg II,* the D.C. Court of Appeals explained that an intentional tort can be within the scope of employment "if the tort is committed partially because of a personal motive, such as revenge, as long as the employee is actuated at least in part by a desire to serve his principal's interest." Weinberg II, 782 A.2d 758.

The D.C. Circuit Court's decision in *Majano v. United States*, 469 F.3d 138 (D.C. Cir. 2006) adds nuance to the principle discussed in *Weinberg II* and clarifies that, while an employee may initially be motivated out of a desire to serve the employer's interest, that desire is capable of being cut off and converted to a desire solely to advance the employee's own purposes.

In *Majano*, the D.C. Circuit was called on to determine if the individual federal employee defendant, Ms. Kim, was entitled to Westfall Act protection when she assaulted Majano, a custodial employee, who had attempted to check Kim's identification before she entered the Smithsonian Building. After granting discovery, the District Court granted the defendant's motion for summary judgment, concluding that as a matter of law the government had established that the assault was undertaken in the scope of the defendant's employment. *Id.* at 140.

As a backdrop to its decision to reverse the district court's ruling, the D.C. Circuit Court of Appeals opined:

> **[W]hen courts have resolved scope of employment questions as a matter of law it has generally been to hold that the employee's action was not within the scope of her employment** and thus to absolve the employer of any liability. In *Jordan* [*v. Medley*, 711 F.2d 211, 215 (D.C.Cir.1983)], writing for this Court, then-Judge Scalia explained why it would be unusual to find, as a matter of law, that an employee was acting within the scope of her employment when she committed an intentional tort: 'A directed verdict against the employer would be particularly rare in the case of an intentional tort, **which by its nature is willful and thus more readily suggests personal motivation**.'

11

*Id.* a 141 (emphasis added).

Emphasizing that "The key inquiry is the employee's intent **at the moment the tort occurred**" (*id.* at 142 (emphasis added)), the D.C. Circuit then determined that – while the initial push that the defendant gave to Majano may have been associated with her desire to gain entry to the building (an aim that was consistent with Kim's duties of employment), it was possible that her subsequent assault – yanking on Majano's neck lanyard – was motivated solely by her own personal frustration: "[O]nce she gained access to the building, Kim's assault of Majano has all the markings of an independent trespass. The assault was violent and unprovoked and took place after Kim had walked approximately 30-feet down a hallway well inside the building." *Id.* at 142.

The *Majano* court made another conclusion that has direct bearing on this case. In addition to emphasizing the "employee's intent at the moment the tort occurred," (*supra*) the court also indicated that the nature of the attack was crucial to the analysis. It held:

> The nature of the attack also informs the intent analysis. … **the nature of the alleged tort permits the imputation of a purely personal motivation** … The outrageous quality of an employee's … act may well be persuasive in considering whether his motivation was purely personal.

*Id.* at 142 (emphasis added) (quoting *Penn Cent. Transp. Co. v. Reddick,* 398 A.2d 27, 31 (D.C.1979)) (internal quotation marks omitted).

The *Majano* court concluded: "We think that a reasonable jury could look at these facts and conclude that when Kim assaulted Majano, she had turned away from her purpose to gain entry to the building and instead was acting "solely for the accomplishment of [her] independent malicious or mischievous purposes." *See also Kimbro v. Velten*, 30 F.3d 1501, 1505 (D.C. Cir. 1994) (generally an intentional tort is

regarded as falling outside the scope of employment-at least if the employee's conduct 'is different in kind from that authorized ... or too little activated by a purpose to serve [the employer].'") (emphasis added) (citing Restatement of Agency (Second), § 228 (1958)).

While Kaufman and Winn may have been Ms. Hicks' supervisors, they are not employed to conduct the kind of activities that gave rise to the tortious conduct at issue here. Specifically, on information and belief, the Agency has delegated the duty to collect government property from terminated employees to the Agency's Office of Human Resources. *See*, e.g. Exhibit 1, the termination notice, which informs Ms. Hicks to return government property **to Human Resources** by the end of the following day.

Moreover, Winn and Kaufman's actions actually thwarted the OSAA's purpose of ensuring the return of its property from Ms. Hicks. The assault and other physically tortious conduct occurred after Ms. Hicks indicated that she would turn the documents over to Human Resources so that she could get a receipt. *See* Plaintiff's Complaint at Para. 23 and Defendant OSAA's Answer at Para. 23. This was entirely consistent with the OSAA's instructions to Ms. Hicks in the termination notice. *See* Exhibit 1.[8] Moreover, Ms. Hicks gave no indication at all that she intended to leave without turning in her government property. Her stated purpose, indeed, was to proceed directly to Human Resources. *See* Plaintiff's Complaint at Para. 23.

Since Winn and Kaufman's actions were both violent and designed to thwart Ms. Hicks from returning the OSAA's property to Human Resources, it should be assumed that they had some ulterior, and solely personal, motive for their tortious conduct. This

---

[8] The termination letter actually gave her until the following day to turn in any government property: "If you have Senate property at home, you are to bring it to Human Resources by close of business tomorrow."

conclusion is only reinforced considering that nothing would have stopped Winn and Kaufman from politely accompanying (or having the Capitol Police accompany) Ms. Hicks to Human Resources had they truly been concerned that she would abscond with government property. *See Stokes*, 327 F.3d at 1215 ("the complaint is construed liberally in the plaintiffs' favor, and we grant plaintiffs the benefit of all inferences that can be derived from the facts alleged."); *Majano*, 469 F.3d 142 ("when Kim assaulted Majano, she had turned away from her purpose to gain entry to the building and instead was acting solely for the accomplishment of her independent malicious or mischievous purposes."); *Kimbro v. Velten*, 30 F.3d at 1505 (D.C. Cir. 1994) ("generally an intentional tort is regarded as falling outside the scope of employment [if it is] … too little activated by a purpose to serve [the employer]"); *Weinberg II, supra* (conduct is within the scope if "wholly or partially in furtherance of the master's business."); Restatement (Second) Section 228(2) (1958) (tortious conduct not within scope of employment if "too little actuated by a purpose to serve the master.").

*Caesar v. United States*, 258 F. Supp. 2d 1 (D.D.C. 2003) (J. Sullivan)(cited by the Defendants at p. 5) was issued prior to *Majano v. United States, supra*. As such, the probative value of this District Court case may be in doubt. In *Caesar*, two colleagues argued with respect to a work project, and in the course of that argument, one of the employees struck the other with a door, tearing the victim's rotator cuff. It is unclear, in light of *Majano*, whether that assault would still be considered within the scope of the defendant's employment. Even so, *Caesar* can be distinguished from this case. In *Caesar*, the argument and the assault in question were part of the same, metaphysically

inseparable event, and the assault was apparently provoked by the plaintiff's comment about the project in which the defendant was involved.

In the case at bar, Winn and Kaufman's tortious conduct is separable from the desire to serve the employer. The employment-related conduct in this case ended when Ms. Hicks informed Winn and Kaufman that she would return her government property to Human Resources. The tortious conduct that followed was no longer associated with securing the OSAA's property. As such, the intentional torts were unconnected to the employer's purpose, and unprovoked by Ms. Hick's actions. *See Majano, infra.*

Because the Plaintiff has established that the Defendants' actions fail the "intent/purpose" test necessary for tortious conduct to come under the scope of employment analysis, the Plaintiff is entitled to judgment as a matter of law on this issue, and Defendants Winn and Kaufman should be maintained as individual defendants.

> ii.    ***Winn and Kaufman's Actions Fail the Foreseeability Test***

The D.C. Circuit decision in *Rasul v. Myers*, 512 F.3d 644 (D.C. Cir. 2008)(the Defendants cited to the *Rasul* District Court opinion in its Motion to Dismiss at 5) helps to understand the concept of foreseeability as it applies to the scope of employment analysis. In *Rasul,* the defendants were soldiers whose job it was to detain and interrogate enemy combatants. *Id.* at 658 ("detention and interrogation of suspected enemy combatants is a central part of the defendants' duties as military officers charged with winning the war on terror.").

The D.C. Circuit explained that conduct is foreseeable if it is incidental to the kind of activities the defendants were employed to perform. *Id.* at 656-67 ("[t]o be 'of the kind' of conduct an individual is employed to perform, the Restatement explains that

the conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.") (emphasis added). The court went on to explain, in turn, that "conduct is 'incidental' to an employee's legitimate duties if it is 'foreseeable'" and that to be foreseeable, the torts must be a direct outgrowth of the employee's instructions or job assignment." *Id.* (emphasis added) (relying on and quoting *Haddon v. United States*, 68 F.3d 1420, 1424 (D.C. Cir. 1995)).

Based on the above legal foundation, the D.C. Circuit held that the *Rasul* plaintiffs could not possibly prevail, even if they had been granted discovery, because the torture that the plaintiffs had suffered was foreseeable in light of the *Rasul* defendants' instructions and assignment:

> [E]ven if the detainees were to establish that the defendants authorized, implemented, supervised and condoned torture and detention based on evidence obtained through discovery, **the defendants' conduct would nonetheless fall within the scope of their employment because the defendants were employed to detain and interrogate suspected enemy combatants** and the plaintiffs concede that the alleged torture and detention were "intended as interrogation techniques to be used on detainees.

*Id.* at 662(emphasis added).

In this case, it is not "foreseeable" or a "direct outgrowth of instructions or job assignments" for Ms. Hicks' second- and third-level supervisors to have assaulted and wrongfully imprisoned her – and then filed a false report to the Capitol Police – in order to prevent her from returning her government property to Human Resources. It is, in fact, absurd to conclude that the employer would expect its managers to use force under the circumstances presented here. This is particularly so because, on information and belief, the Defendant OSAA's Human Resources personnel are trained to professionally handle termination procedures. Moreover, again on information and belief, Human Resources

has protocols for relying on the Capitol Police, who are trained in the safe and appropriate use of force, in the event that the use of force would become necessary in termination situations.

*Moseley v. Second New St. Paul Baptist Church*, 534 F.3d 346 (D.C. 1987) is a helpful counterpoint to *Rasul*, in that it demonstrates the limits of what conduct is foreseeable by an employer.  In *Moseley*, a night janitor, who had expelled the two minor plaintiffs off the premises the first time he found them, imprisoned and sexually assaulted them the second time they crossed his path. *Id.* at 346-47.  The D.C. Court of Appeals ruled that the sexual assault did not occur in the scope of the janitor's employment because there was no evidence that the janitor was hired to conduct any security duties.

If it was unforeseeable for a night janitor, who was on duty when the premises were supposed to be otherwise vacant, (*Id.* at 348), and who first expelled the children from the premises, to undertake security functions, then it should be likewise unforeseeable for the Division Manager (Kaufman) and Director of IT Support Services (Winn) to have responsibility for ensuring, using force if necessary, that terminated employees turn over government property upon termination (instead of to Human Resources, contrary to agency policy and in direct contradiction to the instructions contained on the notice of termination).[9]  *See Kimbro v. Velten*, 30 F.3d 1501 (D.C. Cir. 1994) ("**an allegation of intentional force, as in this case, does not fall within the scope of employment if "unexpectable" by the employer.**") (emphasis added) (citing Restatement of Agency (Second), § 228 (1958)).

---

[9] Plaintiff submits that, of course, filing false reports with the Capitol Police fits nowhere in any conceivable job description.

Because the Plaintiff has established that the Defendants' actions fail the "foreseeability" test necessary for tortious conduct to come under the scope of employment analysis, the Plaintiff is entitled to judgment as a matter of law on this issue, and Defendants Winn and Kaufman should be maintained as individual defendants. *Weinberg II, supra.*

**C.      In the Alternative, the Plaintiff Should be Permitted to Conduct Discovery**

If the Court does not deny the Defendants' Motion for the reasons explained above (*i.e.* a Motion to Dismiss is in appropriate and the Plaintiff has demonstrated that she is entitled to judgment on the issue as a matter of law), then the Plaintiff respectfully requests that she be granted the right to conduct discovery on the scope of employment issue, and that she be given the opportunity to make her case either by way of a summary judgment proceeding or evidentiary hearing.  *See Stokes*, 327 F.3d at 1214:

> [A] plaintiff challenging the government's scope-of-employment certification bears the burden of coming forward with specific facts rebutting the certification … **Because the plaintiff cannot discharge this burden without some opportunity for discovery**, the district court may permit limited discovery and hold an evidentiary hearing to resolve a material factual dispute regarding the scope of the defendant's employment."

(emphasis added) (internal citations omitted).

Ms. Hicks is entitled to discovery even under the seemingly less friendly jurisprudence of *Rasul v. Myers*, 512 F.3d at 662, wherein the D.C. Circuit ruled "discovery is not warranted if the plaintiff did not allege any facts in his complaint or in any subsequent filing ... that, if true, would demonstrate that the defendant had been acting outside the scope of his employment." (internal citations omitted).

In this case, the Plaintiff has asserted undisputed facts, contained in the record, that demonstrate that the tortious conduct was outside the scope of employment. Specifically, the termination notice (Exhibit 1) establishes that it was appropriate for Ms. Hicks to return her government property to the Human Resources Department and that she had until the close of the day following her receipt of the termination notice in which to do so. Additionally, the Defendant OSAA's Answer, at paragraph 23, establishes that Ms. Hicks asked for a receipt, that Winn and Kaufman refused, and that after Winn and Kaufman's tortious activity was put to a stop, Ms. Hicks was ultimately provided with a receipt for the returned items. The Plaintiff rebuts the Certification on these facts alone; and – because the facts on which Ms. Hicks' opposition rests are established by the Defendants' own pleadings and documents, and are therefore uncontradicted – they exceed the requirement imposed by *Stokes* and *Rasul*, *supra*. In addition, the undersigned counsel for the Plaintiff submits an affidavit consistent with Rule 56(f), attached here as Exhibit 2.

## **CONCLUSION**

For the foregoing reasons, the Plaintiff respectfully requests that the Defendants' Motion to Substitute and Dismiss be denied as a matter of law. In the alternative, the Plaintiff requests to be given the opportunity to conduct discovery of facts sufficient to rebut the Attorney General's Certification that Winn and Kaufman were acting in the scope of their employment with the OSAA.

Respectfully Submitted,
ALDERMAN, DEVORSETZ & HORA, PLLC


/s/ Leslie D. Alderman III (D.C. #477750)
1025 Connecticut Ave., NW
Suite 615
Washington, DC 20036
Tel: 202-969-8220
Fax: 202-969-8224

Counsel for the Plaintiff

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AFRIKA N. HICKS** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Case No: 1:07-cv-02186 (RWR)** |
| | ) | |
| | ) | |
| **THE OFFICE OF THE SERGEANT** | ) | |
| **AT ARMS FOR THE UNITED** | ) | |
| **STATES SENATE et al.** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |
| | ) | |
| | ) | |

# EXHIBIT 1

# United States Senate

OFFICE OF THE SERGEANT AT ARMS

**To:**    A. Nicole Hicks
          Telecommunications Operations Specialist

**From:**   Kimball Winn
          Director, IT Support Services

**Date:**   February 27, 2007

**Subject:**    Termination of Employment

In reviewing your quarterly performance review which was forwarded to me for signature, I noted that your work performance and conduct have not improved to a satisfactory level since you were placed on quarterly review status in October 2006. As a consequence, I am terminating your employment with the Office of the Sergeant at Arms effective today.

- In your October 2006 annual performance review, you were rated as "needs improvement" in five out of eleven rating factors – Work and Organization, Dependability/Reliability, Interpersonal Relations and Cooperation, Communication, and Attendance and Punctuality – and you were placed on quarterly review status.

- As a consequence of additional performance problems in October, you received a counseling memo on October 27. This memo reminded you that failure to improve your work performance and compliance with Sergeant at Arms and departmental policies and procedures to a satisfactory level and to sustain that satisfactory standard might result in disciplinary action, up to and including termination of employment.

- During the quarterly review period from October 27, 2006 through February 13, 2007, your performance and conduct continued to decline and, on January 25, your manager relayed an email summary of her continuing concerns about your performance and conduct to you in anticipation of the end of the quarterly review period.

- On February 13, your manager gave you the quarterly review and noted that your performance since January 25 has continued to be problematic and that your overall performance during the quarter has been unsatisfactory.

It is apparent that, despite our best efforts to help you to improve your performance and conduct, you are simply not making the necessary improvements so as to move yourself in the right direction. Therefore it does not serve the interests of the Office of the Sergeant at Arms to continue your employment.

You are to turn in your Senate identification badge, keys, and any Senate equipment issued to you immediately. If you have Senate property at home, you are to bring it to Human Resources

A. Nicole Hicks
February 27, 2007
Page 2

(SH-142) by close of business tomorrow, February 28. You may take your personal belongings with you today or we will arrange to pack them for you to pick up from Human Resources (SH-142) by close of business tomorrow, February 28.

Please contact the Senate Disbursing Office (202-224-1093) for information about your benefits.


cc:    Greg Hanson
       Personnel file

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

**AFRIKA N. HICKS**                         )
                                            )
                            **Plaintiff**   )
                                            )
            **v.**                          )    **Case No: 1:07-cv-02186 (RWR)**
                                            )
                                            )
**THE OFFICE OF THE SERGEANT**              )
**AT ARMS FOR THE UNITED**                  )
**STATES SENATE et al.**                    )
                                            )
                            **Defendants**  )
                                            )
                                            )
                                            )

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT FOR**

**THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AFRIKA N. HICKS** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Case No: 1:07-cv-02186 (RWR)** |
| | ) | |
| | ) | |
| **THE OFFICE OF THE SERGEANT** | ) | **May 14, 2008** |
| **AT ARMS FOR THE UNITED** | ) | |
| **STATES SENATE** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

## RULE 56(f) DECLARATION OF COUNSEL FOR THE PLAINTIFF

I, Leslie D. Alderman III, counsel for the Plaintiff in the above-captioned matter hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

Pursuant to Rule 56(f), and the D.C. Circuit Court of Appeals cases *Stokes v. Cross*, 327 F.3d 1210 (D.C. Cir. 2003) and *Rasul v. Myers*, 512 F.3d 644, 662 (D.C. Cir. 2008), counsel for the Plaintiff submits this declaration because, without discovery, the Plaintiff cannot present facts (with the exception of the undisputed facts contained in the Opposition Brief to which this Declaration is attached) essential to justify Plaintiff's opposition to the Defendant's Motion to Substitute the United States and To Dismiss Count IV of the Complaint for Lack of Subject Matter Jurisdiction. If discovery is granted, Plaintiff believes the following facts, *inter alia*, will be established with admissible evidence:

1)      The OSAA's Office of Human Resources has sole responsibility for accepting government property from terminated employees.

2)      OSAA's Office of Human Resources issues receipts or other forms of acknowledgment for the return of government property from terminated employees.

3)      OSAA managers, such as Defendants Kaufman and Winn received training or notice informing them the Human Resources had responsibility for recuperating government property from terminated employees.

4)      Kaufman and Winn knew that Human Resources had responsibility for recuperating government property from terminated employees.

5)      OSAA maintains a policy whereby, under no circumstances may an employee use force against another employee.

6)      Ms. Hicks had until the close of business the day after she received her termination notice to turn in any government property to Human Resources.

7)      Prior to the time of the assault, Ms. Hicks was composed and non-confrontational.

8)      Ms. Hicks asked for a receipt for her returned property; and she did so calmly and in a manner that was not reasonably likely to provoke a reasonable person into acting violently.

9)      Both Winn and Kaufman insisted that Ms. Hicks turn over her government property immediately, to them, and they refused to issue Ms. Hicks a receipt, all in violation of OSAA policies and procedures.

10)     Ms. Hicks calmly stated that she would return her government property to Human Resources so that she could get a receipt.

11)    Winn and Kaufman were not motivated by any desire to serve the OSAA's purposes or interests when they insisted that Ms. Hicks return government property in her possession to them instead of to Human Resources.

12)    Winn and Kaufman were not motivated by any desire to serve the OSAA's purposes or interests when they assaulted and wrongfully imprisoned Ms. Hicks.

13)    Winn and Kaufman both gave inaccurate reports to the Capitol Police who investigated their conduct and that of Ms. Hicks' husband, Officer Nikkol Hicks.

14)    Winn and Kaufman gave false reports to the Capitol Police in order to cause harm to Ms. Hicks and her husband and not out of a desire to serve the OSAA's purposes or interests.

15)    The only reason that Winn and Kaufman assaulted and wrongfully imprisoned Ms. Hicks and then gave false information to the Capitol Police was to satisfy their purely personal desires and aims against Ms. Hicks.

Respectfully Submitted,
ALDERMAN, DEVORSETZ & HORA, PLLC


/s/ Leslie D. Alderman III (D.C. #477750)
1025 Connecticut Ave. NW
Suite 615
Washington, DC 20036
Tel: 202-969-8220
Fax: 202-969-8224

Counsel for the Plaintiff

3