UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
AFRIKA HICKS,                   )
                                )
    Plaintiff,              )
                                )
    v.                      )      Civil Action No. 07-2186 (RWR)
                                )
OFFICE OF THE SERGEANT AT       )
ARMS FOR THE UNITED STATES      )
SENATE, <u>et al.</u>,               )
                                )
    Defendants.             )
_____)

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Afrika Hicks, a former employee of the Office of the Sergeant at Arms for the United States Senate, brings assault, wrongful imprisonment, and intentional infliction of emotional distress claims against defendants Kimball Winn and Rick Kaufman, her former supervisors.  Hicks also brings religious discrimination and retaliation claims against the Senate.  Winn and Kaufman filed a government certification stating that they were acting within the scope of their employment during the alleged incidents and move to substitute the United States and to dismiss the tort claims against them for lack of subject matter jurisdiction.  Because Hicks has met her burden of challenging the government's certification as to the intentional infliction of emotional distress claim, but not the assault and wrongful imprisonment claims, the motion to substitute and to dismiss will be granted in part and denied in

part.  The United States will be substituted for Winn and
Kaufman as to the assault and wrongful imprisonment claims, and
these two claims will be dismissed for lack of subject matter
jurisdiction because sovereign immunity has not been waived
under the Federal Tort Claims Act ("FTCA").  Limited discovery
will be allowed on the defendants' scope of employment regarding
the intentional infliction of emotional distress claim.

<u>BACKGROUND</u>

The complaint and materials to which it refers set forth
the following facts relevant to the pending motion.  Hicks
worked as a Telecommunications Operation Specialist at the
Office of the Sergeant at Arms for the United States Senate.
(Compl. ¶ 10.)  In a meeting, Winn and Kaufman, Hicks'
supervisors, "issued . . . Hicks a termination notice with an
immediate effective date."  (<u>Id.</u> ¶ 22.)  The termination notice
was signed by Winn and stated that Hicks "[was] to turn in [her]
Senate identification badge, keys, and any Senate equipment
issued to [her] immediately" and "may take [her] personal
belongings with [her] today."  (Pl.'s Opp'n to Defs.' Mot. to
Substitute the United States & Dismiss Count IV ("Pl.'s Opp'n"),
Ex. 1 at 1.)  Hicks left the meeting room to retrieve her
personal possessions and returned "to turn over her Agency
equipment, keys and identification badge to her supervisors."
(Compl. ¶ 23.)  Hicks requested a receipt, but Winn refused to

provide one.  (Id.)  Hicks then decided to return her Senate property to the Senate's human resources department in order to obtain a receipt.  (Id.)  Winn and Kaufman "attempted to physically restrict" Hicks from leaving the office by "pushing [her] against the wall and physically grabbing and restraining her."  (Id.)  Hicks' husband, Nikkol Hicks, an officer with the Capitol Police, witnessed the defendants restraining Hicks.  (Id. ¶ 24.)  Later, Winn and Kaufman allegedly misused the Capitol Police internal complaint procedures to prompt an internal affairs investigation of Officer Hicks.  (Id. ¶ 36.)  This alleged misuse included Winn falsifying a report against Officer Hicks.  (Id. ¶ 24.)

Count IV of Hicks' complaint alleges assault, false imprisonment, and intentional infliction of emotional distress claims against Winn and Kaufman.  Winn and Kaufman move to substitute the United States as the defendant in Count IV and have filed a certification by the then-Chief of the Civil Division, United States Attorney's Office for the District of Columbia, stating that Winn and Kaufman were acting within the scope of their employment.  Winn and Kaufman also move to dismiss Count IV for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because Hicks has not exhausted her FTCA administrative remedies and because sovereign immunity has not been waived for these alleged torts.  Hicks

-4-

acknowledges that sovereign immunity has not been waived under the FTCA. (Pl.'s Opp'n at 3 (stating that Hicks would "be left without recourse" if the United States is substituted for Winn and Kaufman because "as the Defendants correctly argue, the United States has not waived immunity for claims of, or arising from, torts such as assault and wrongful imprisonment").) However, Hicks maintains that Kaufman and Winn's actions were not within the scope of their employment, rendering the United States' substitution improper and the FTCA inapplicable.[1]

<u>DISCUSSION</u>

"On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." <u>Shuler v. United States</u>, 448 F. Supp. 2d 13, 17 (D.D.C. 2006) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)). In reviewing the motion, a court accepts as true all of the factual allegations contained in the complaint, <u>Artis v. Greenspan</u>, 158 F.3d 1301, 1306 (D.C. Cir. 1998), and may also consider "undisputed facts evidenced in the record." <u>Coal. for Underground Expansion v. Mineta</u>, 333 F.3d 193, 198 (D.C. Cir. 2003); <u>see also</u> <u>Tootle v. Sec'y of the Navy</u>, 446 F.3d

---

[1] Thus, resolving the defendants' argument that Hicks failed to exhaust her administrative remedies as is required by the FTCA must await resolution of whether the FTCA even applies to Hicks' intentional infliction of emotional distress claim.

167, 174 (D.C. Cir. 2006) (explaining that a court may look beyond the pleadings to resolve disputed jurisdictional facts when considering a motion to dismiss under Rule 12(b)(1)).  The "nonmoving party is entitled to all reasonable inferences that can be drawn in her favor." Artis, 158 F.3d at 1306 (emphasis omitted).

"The United States is immune from suit unless it waives its sovereign immunity through an act of Congress." Hayes v. United States, 539 F. Supp. 2d 393, 397 (D.D.C. 2008) (citing FDIC v. Meyer, 510 U.S. 471, 475 (1994)).  In a suit against the United States, the plaintiff "bears the burden of proving that the government has unequivocally waived its immunity for the type of claim involved." Hayes, 539 F. Supp. 2d at 397 (citation omitted).  "The [FTCA] provides . . . a waiver in civil damages actions based on 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]'" Id. (quoting 28 U.S.C. § 1346(b)).  However, the FTCA's waiver of sovereign immunity does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h).

I.   WESTFALL CERTIFICATION

Courts must "independently determine whether the United States is a proper defendant" in a tort suit against federal employees.  Koch v. United States, 209 F. Supp. 2d 89, 91 (D.D.C. 2002).  "The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, 28 U.S.C. § 2679(d), provides that a federal employee is immune from tort liability when he is 'acting within the scope of his office or employment at the time of the incident out of which the claim arose.'"  Healy v. United States, 435 F. Supp. 2d 157, 161 (D.D.C. 2006) (quoting 28 U.S.C. § 2679(d)).  Under the Act, "when the Attorney General or his designee believes that a federal employee was acting within the scope of employment, he may issue a certification to that effect."  Id. at 161 (citation omitted).  The certification "requires the substitution of the United States for the federal employee as the defendant in the lawsuit[] and it converts the lawsuit into an action against the United States under the Federal Tort Claims Act."  Id. (internal quotations and citations omitted).  The Attorney General's certification is prima facie evidence that the employees' conduct was within the scope of their employment.  Hill v. United States, 562 F. Supp. 2d 131, 135 (D.D.C. 2008).

Rule 8 requires that a complaint contain a short and plain statement of the claim showing that the plaintiff is entitled to

relief.  Under that liberal pleading standard, the complaint of a plaintiff challenging the certification "need only have alleged sufficient facts that, taken as true, would establish that the defendants' actions exceeded the scope of their employment."  Stokes v. Cross, 327 F.3d 1210, 1215 (D.C. Cir. 2003).  The D.C. Circuit "has made it clear that '[n]ot every complaint will warrant further inquiry into the scope-of-employment issue.' . . .  Consequently, where a plaintiff fails to allege sufficient facts to rebut the certification, the United States must be substituted as the defendant because the federal employee is absolutely immune from suit."  Wuterich v. Murtha, 562 F.3d 375, 381 (D.C. Cir. 2009) (quoting Stokes, 327 F.3d at 1216).

The scope of employment inquiry is governed by the law of agency as applied in the District of Columbia, where the tort allegedly occurred.  See Wilson v. Libby, 498 F. Supp. 2d 74, 97 (D.D.C. 2007).  In the District of Columbia, the Restatement (Second) of Agency provides the governing framework for determining whether an employee acted within the scope of employment.  Id.  "Under the Restatement, an employee's conduct falls within the scope of employment if: 1) it is of the kind of conduct he is employed to perform; 2) it occurs substantially

-8-

within the authorized time and space limits;[2] 3) it is actuated,
at least in part, by a purpose to serve the master; and 4) if
force is intentionally used by the servant against another, the
use of force is not unexpected by the master." Id. (citing
Restatement (Second) of Agency § 228 (1957)).

     A.    Nature of conduct

     "[C]onduct will be of the kind the servant is employed to
perform if it is 'of the same general nature as that authorized'
or is 'incidental to the conduct authorized.'"  Kalil v.
Johanns, 407 F. Supp. 2d 94, 97 (D.D.C. 2005) (quoting Haddon v.
United States, 68 F.3d 1420, 1423-24 (D.C. Cir. 1995), abrogated
on other grounds by Osborn v. Haley, 549 U.S. 225 (2007)).
Conduct is incidental if it is foreseeable.  Haddon, 68 F.3d at
1424.

        Foreseeable in this context does not carry the same
        meaning as it does in negligence cases; rather, it
        requires the court to determine whether it is fair to
        charge employers with responsibility for the
        intentional torts of their employees.  To be
        foreseeable, the torts must be a direct outgrowth of
        the employee's instructions or job assignment.  It is
        not enough that an employee's job provides an
        opportunity to commit an intentional tort.

Id. (internal citations and quotation marks omitted).  The
foreseeability inquiry requires courts "to look beyond alleged

---

     [2] The complaint alleges that the conduct occurred at Hicks'
workplace while the defendants were on duty.  The defendants do
not dispute this fact.  Therefore, the defendants' conduct
satisfies the time and space requirement.

intentional torts" and "focus[] on the underlying dispute or controversy, not on the nature of the tort." Wilson, 498 F. Supp. 2d at 97-98 (internal quotation marks omitted).  The inquiry thus "is broad enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf."  Id.

Courts have drawn a distinction between actions that are a direct outgrowth of the job and those that do not arise directly from an employee's performance of authorized duties.  For example, in Lyon v. Carey, 533 F.2d 649 (D.C. Cir. 1976), a deliveryman assaulted a customer immediately following a dispute over whether the mattress should be carried into the apartment and whether a check was an acceptable form of payment.  The Lyon court concluded that the assault "arose naturally and immediately between [the deliveryman] and the [customer] about two items of great significance in connection with [the deliveryman's] job[:] the request of the [customer] . . . to inspect the mattress and springs before payment . . . and [the deliveryman's] insistence on getting cash rather than a check. . . .  The dispute arose out of the very transaction which had brought [the deliveryman] to the premises."  Id. at 652.  Moreover, in Johnson v. Weinberg, 434 A.2d 404 (D.C. 1981), the D.C. Court of Appeals found that a "laundromat could be liable for injuries inflicted when an employee responsible

for removing clothes from washing machines shot a customer

during a dispute over missing shirts . . . [b]ecause [t]he

assault arose out of the transaction which initially brought

[the customer] to the premises . . . and was triggered by a

dispute over the conduct of the employer's business[.]"  Haddon,

68 F.3d at 1425 (internal quotation marks omitted).  Lyon and

Johnson "mark the outer limits of scope of employment."  Id. at

1425.

        However, if the employee's tort did not arise directly from

performance of an authorized duty and the job merely provided an

opportunity to act, courts have found such conduct to be outside

the scope of employment.  In Penn Cent. Transp. Co. v. Reddick,

398 A.2d 27 (D.C. 1979), a railroad employee assaulted a taxi

driver while traveling off duty from one worksite to another and

the court concluded that the employee's conduct "'was neither a

direct outgrowth of [his] instructions or job assignment, nor an

integral part of the employer's business activity.'"  Haddon, 68

F.3d at 1425 (quoting Reddick, 398 A.2d at 32).  Furthermore, in

Haddon, where an electrician threatened to harm a chef unless

the chef withdrew his administrative complaint against another

co-worker, the court found that the electrician was not acting

within the scope of his employment because the electrician's

threat did not stem from a dispute over the performance of his

work, it was completely unrelated to his responsibilities as an

-11-

electrician, it did not occur while performing assigned duties,
and the chef's administrative complaint did not involve him.
Id.

Hicks asserts that her case is similar to Mosely v. Second
New St. Paul Baptist Church, 534 A.2d 346 (D.C. 1987), where a
night janitor did not act within the scope of his employment
when he sexually assaulted two trespassers because there was no
evidence that security duties were within the janitor's job
responsibilities.  Similarly, the D.C. Court of Appeals in
Boykin v. District of Columbia, 484 A.2d 560, 562 (D.C. 1984),
found that an employee whose duties included training blind
students to walk was not acting within the scope of his
employment when he sexually assaulted a student.  In Boykin, the
connection between the conduct and the employee's duties were
too attenuated because the attack was unprovoked, did not serve
the school's interests in any way, and was not a direct
outgrowth of the school's authorization that the employee guide
a student throughout the building.

Hicks argues that it was not foreseeable that Winn and
Kaufman would assault her, wrongfully imprison her, and misuse
the internal complaint system by making false statements to the
Capitol Police. (Pl.'s Opp'n at 16.)  However, Kaufman and Winn
acted in their supervisory roles when they terminated Hicks and
their attempt to detain Hicks and secure Senate property was

-12-

directly connected to their employment.  Evidence that Winn and
Kaufman may have been unauthorized to collect Senate property
would not change the fact that the defendants were acting
incidental to their authorized job function of terminating
Hicks.  Unlike in Penn Central or Mosely where the link between
the tort and the employment was attenuated, the alleged assault
and wrongful imprisonment arose directly from Winn and Kaufman
terminating Hicks.  This case therefore is more comparable to
Caesar v. United States, 258 F. Supp. 2d 1 (D.D.C. 2003).
There, the court found that an intentional tort that occurred
during or immediately following a dispute over how a business
project would be handled by the plaintiff "was 'triggered by a
dispute over the conduct of the employer's business' and 'arose
naturally and immediately between [a coworker] and [the]
plaintiff . . . in connection with [the coworker's] job." Id.
at 4 (internal quotation marks omitted).  Likewise, in Koch v.
United States, 209 F. Supp. 2d 89, 93 (D.D.C. 2002), the court
also found that the alleged intentional tort was the "direct
outgrowth" of the plaintiff's criticism of a coworker's work
performance and was within the scope of employment because the
incident "arose solely because of a dispute about the work
performances of [the plaintiff and his co-worker]."  Here, the
defendants' employment status did not "merely provide an
opportunity for the [assault and detention] to occur."  Adams v.

-13-

Vertex, Inc., Civil Action No. 04-1026 (HHK), 2007 WL 1020788, at *7 (D.D.C. Mar. 29, 2007).  Kaufman and Winn's assault and detention of Hicks were foreseeable and therefore incidental to authorized conduct.

However, Hicks alleges that the defendants[3] caused a Capitol Police internal affairs investigation to be launched against Officer Hicks by falsifying a report against him, conduct she alleges was a misuse of the police complaint procedures and inflicted emotional distress upon her.  (Compl. ¶¶ 24, 36.)  It is not apparent that the defendants' job duties as telecommunications operations supervisors would contemplate launching internal affairs investigations with law enforcement agencies targeting non-supervisees, much less by use of false reports.  Hicks maintains that the defendants' jobs merely provided the opportunity for them to commit the tort of intentional infliction of emotional distress for reasons independent of their employment.  The defendants dispute that they had any aim to launch any Capitol Police investigation with any falsified report at all.  They claim that the Senate's human resources department asked Winn to document Hicks' termination, that he did so, that the Capitol Police asked him for a copy of

_____

[3] The defendants argue that the complaint "alleges only that Winn, not Kaufman, gave a false report to the USCP." (Defs.' Reply at 8 n.3.)  While paragraph 24 mentions that only Winn falsified the report, paragraph 36 alleges that Winn and Kaufman misused the internal complaint procedures.

-14-

that report, and that he provided it as requested. (Defs.'
Stmt. of P. & A. in Supp. of Their Mot. to Substit. & Dismiss
("Defs.' Mem.") at 6-7.)

Whether there was one benign report for the human resources
department as the defendants say, or some different sinister
report as Hicks alleges, cannot be determined from the
pleadings. At this stage in the litigation, Hicks is "merely
required to plead sufficient facts that, if true, would rebut
the certification" and all allegations are read in Hicks' favor.
Stokes, 327 F.3d at 1216 (noting that a court would not err "in
dismissing the claim without a hearing where the plaintiff did
not allege any facts in his complaint or in any subsequent
filing . . . that, if true, would demonstrate that [the
defendant] had been acting outside the scope of his employment")
(internal quotation marks omitted and brackets in original).
Hicks' allegations, if true, would allow a reasonable juror to
conclude that the defendants' actions did not stem from their
job assignments and were not incidental to conduct authorized by
their employer. However, this factual dispute, central to
determining the court's jurisdiction, will have to be resolved
after some limited discovery.

    B.  Use of force

    To determine whether the use of force was within the scope
of employment, "[t]he inquiry is necessarily whether the

-15-

intentional tort was foreseeable, or whether it was
'unexpectable in view of the duties of the servant.'" Majano v.
Kim ("Majano I"), Civil Action No. 04-201 (RMC), 2005 WL 839546,
at *8 (D.D.C. Apr. 11, 2005), reversed on other grounds by
Majano v. United States ("Majano II"), 469 F.3d 138 (D.C. Cir.
2006) (quoting Restatement (Second) of Agency § 245).  "[A]
broad range of intentional tortious conduct has been found to be
within the scope of employment despite the violence by which
injury was inflicted.  In fact, employers may be held liable for
foreseeable altercations [that] may precipitate violence . . .
even though the particular type of violence was not in itself
anticipated or foreseeable." Rasul v. Rumsfeld, 414 F. Supp. 2d
26, 36 (D.D.C. 2006), vacated on other grounds, Rasul v. Myers,
555 U.S. 1083 (2008) (internal quotation marks and citations
omitted).

     For example, the D.C. Court of Appeals in Johnson concluded
that the actions of the laundromat employee who shot a customer
during a dispute over missing shirts were not "unexpectable"
because his job required removing clothes from dryers and this
function "placed [the employee] in a position where it would be
anticipated that problems of the nature described here could
arise." Johnson, 434 A.2d at 408-09 (noting that "[i]f a patron
was unable to locate his or her laundry, once having deposited
it, it seems likely that [the employee] would be confronted in

-16-

an effort to resolve the matter"). <u>Johnson</u> was applied in
<u>Majano I</u>.  There, an employee was attempting to enter her
workplace when she was stopped at the entrance by a co-worker,
Mary Majano.  Majano asked to see the employee's identification,
but the employee pushed Majano out of the doorway and forced her
way into the building.  After both individuals walked down a
thirty-foot hallway, the employee allegedly assaulted Majano by
grabbing and repeatedly pulling a lanyard that was around
Majano's neck.  The court concluded that where Majano was warned
not to allow unauthorized people to enter the building, a
"physical or verbal altercation between fellow employees over
the manner of entrance to a . . . building . . . is unfortunate
-- and may be administratively-sanctionable -- but nonetheless
expectable."  <u>Majano I</u>, 2005 WL 839546, at *9.

     Hicks appears to argue that the use of force was not
expected because human resources, not the defendants, was
responsible for collecting agency property and that human
resources has internal procedures for using Capitol Police if
force becomes necessary in termination situations.  (Pl.'s Opp'n
at 16-17.)  The defendants assert that the Senate would expect
force to be used because "[t]erminations are often difficult,
and it is not unusual for an employee who is being terminated to
become upset and confrontational," and that therefore it was not
unexpectable for Hicks and her supervisors "to have a

-17-

confrontation as a result of her immediate termination and her
refusal to return office property." (Defs.' Mem. at 7.)

Both Majano I and Johnson found force to be foreseeable
based on the duties assigned to the individual defendants and
the possibility of confrontation. Winn and Kaufman terminated
Hicks as part of their job duties and the termination letter
told Hicks that "[she was] to turn in [her] Senate
identification badge, keys, and any Senate equipment issued to
[her] immediately." (Pl.'s Opp'n, Ex. 1 at 1 (emphasis added).)
Although Hicks argues that the Senate had procedures for human
resources to collect property, the focus is not on whether Winn
and Kaufman followed Senate policy, but whether the act was
"unexpectable in view of the duties of the servant." Majano I,
2005 WL 839546, at *8 (internal quotation marks omitted). While
the resulting torts may not have been expected, it was not
"unexpectable" that Winn and Kaufman's duties of informing Hicks
that she was terminated and required to return Senate property
could result in a confrontation over the manner in which Hicks
was to return that property. The use of force therefore was
foreseeable.

C.   Intent to serve the master

Much like the "nature of conduct" prong above, "[t]he
intent criterion focuses on the underlying dispute or
controversy, not on the nature of the tort, and is broad enough

to embrace any intentional tort arising out of a dispute that
was originally undertaken on the employer's behalf." Stokes,
327 F.3d at 1216 (internal quotation marks omitted).  The intent
prong is satisfied by "even a partial desire to serve the
master." Council on Am. Islamic Relations v. Ballenger, 444
F.3d 659, 665 (D.C. Cir. 2006) (emphasis omitted).  "[W]here the
employee is in the course of performing job duties, the employee
is presumed to be intending, at least in part, to further the
employer's interests." Harbury v. Hayden, 444 F. Supp. 2d 19,
34 (D.D.C. 2006) (internal quotation marks omitted).  For
example, in Council on American Islamic Relations, the D.C.
Circuit concluded that a congressman's allegedly defamatory
statement made during a press interview was within the scope of
his employment because "[s]peaking to the press during regular
work hours in response to a reporter's inquiry falls within the
scope of a congressman's authorized duties." Id. at 664
(internal quotation marks omitted).  The court found a clear
nexus between speaking to the press and the congressman's
ability to do his job as a legislator since that ability was
tied in part to his relationship with the public, and the
statement to the press "was incidental to the kind of conduct he
was employed to perform." Id. at 664-65.  The fact that an act
may be illegal or unauthorized does not automatically prevent it

-19-

from serving the master at least in some part.  Wilson v. Libby, 535 F.3d 697, 712 (D.C. Cir. 2008).

Whether the agent is acting on behalf of his employer or acting in furtherance of his own ends depends on the employee's intent at the moment a tort occurs and the nature of the attack. Majano II, 469 F.3d at 142.  An employee who is acting only for his own "independent malicious or mischievous purpose" is not intending to serve the employer.  Adams, 2007 WL 1020788, at *8. Majano II illustrates this inquiry.  The Majano II court concluded that the nature of the alleged tort could allow a reasonable jury to impute a purely personal motivation, because "[t]he assault was violent and unprovoked and took place" after the employee had walked thirty-feet from the doorway. Majano II, 469 F.3d at 142.  Unlike the employee's forcible entry into the building, which was "motivated, at least in part, by her desire to fulfill [her] duty [to report to work]," the employee repeatedly pulling the lanyard could allow a jury to conclude that she was acting solely for her own purposes.  Id.

Hicks argues that "[s]ince Winn and Kaufman's actions were both violent and designed to thwart Ms. Hicks from returning the [agency's] property to Human Resources, it should be assumed that they had some ulterior, and solely personal, motive for their tortious conduct."  (Pl.'s Opp'n at 13.)  Hicks states that through discovery she would show that Kaufman and Winn

violated the Sergeant at Arms's policy by using force against her and that human resources had the responsibility to collect agency property from employees and issue receipts to former employees when property was returned. (Pl.'s Opp'n, Ex. 2, Rule 56(f) Declaration ("Rule 56(f) Decl.") at 1, 2 ¶¶ 1-9.)

Kaufman and Winn may have acted violently or not followed the Senate's policy, but violent or unauthorized acts can still be within the scope of employment. See Wilson, 498 F. Supp. 2d at 97-98 (noting that an employer can be liable for an employee's illegal acts). Winn and Kaufman's attempt to restrain Hicks arose out of a dispute undertaken at least in some part on the employer's behalf. The defendants had just notified Hicks of her termination and Hicks was in the process of returning Senate property until she was denied a receipt. Winn and Kaufman's efforts to detain Hicks and collect the property arose from a dispute originally undertaken at least in some part to serve the Senate. The defendants' actions are similar to the employee's act of pushing a co-worker at the building's entrance in Majano II, an act which was prompted by at least some desire of the employee to fulfill her duty to report to work. See also Caesar, 258 F. Supp. 2d at 5 (concluding that because the tortfeasor was angered over the plaintiff's criticism of her work on a project, the tortfeasor's conduct of slamming a door into the plaintiff immediately

following the dispute "was actuated, at least in part to serve her employer"). The timing of the assault further informs the intent analysis. The physical conduct here occurred soon after Hicks was terminated, refused to return the agency property, and attempted to leave the room. Hicks does not make sufficient allegations to allow a reasonable jury to conclude that Winn and Kaufman's detention of Hicks did not arise out of their employment duties and was not intended at least in part to serve the Senate.

However, the allegations that Winn and Kaufman misused the Capitol Police internal complaint procedures by having an internal affairs investigation launched against Officer Hicks via a false report are sufficient to warrant limited discovery.[4] Hicks asserts that if discovery is conducted, the evidence would show that Winn and Kaufman gave false reports to Capitol Police in order to harm Hicks and not out of any desire to serve the Senate. (Rule 56(f) Decl. at 1, 3 ¶ 14.)

---

[4] Winn argues that the plaintiff "has not explained what cause of action she is asserting" in her allegations about submitting a memorandum with false statements. (Defs.' Reply at 8 n.4.) However, the complaint expressly alleges that "[t]hese actions, alone and/or in combinations [sic] with their misuse of the Capitol Police internal complaint procedures (by which, on information and belief, they had an internal affairs investigation launched against Officer Hicks), resulted in the intentional infliction of emotional distress upon the Plaintiff." (Compl. ¶ 36.)

-22-

Misusing internal complaint procedures and submitting a
report containing false statements are actions that could
"permit[] the imputation of a purely personal motivation[,]"
Majano II, 469 F.3d at 142, and could be viewed as an act not
intended to serve the master.  In Stokes v. Cross, the plaintiff
alleged that the defendants "destroy[ed] critical evidence,
prepar[ed] and submitt[ed] false affidavits by use of threat and
coercion, and engag[ed] in other criminal acts."  Stokes, 327
F.3d at 1216.  Despite the defendants' arguments that their
conduct was "incidental to their duty to investigate and report
other officers who fail to render assistance [to another
officer]," the court ordered limited discovery on the scope of
employment issue because the plaintiff made sufficient
allegations that the defendants' illegal and unauthorized
actions were orchestrated to prevent his promotion, which, if
true, would rebut the Westfall certification.  Id.; see also
Hosey v. Jacobik, 966 F. Supp. 12, 15 (D.D.C. 1997) (stating
that where the plaintiff alleged that the individual defendant
gave materially false information to a background investigator,
if "the Court concluded that [the individual defendant] gave
information to the [investigator] with the sole intent of
protecting his own interests, not those of the Government, then
Plaintiff would carry his burden on the third prong" in
rebutting the certification).

-23-

The D.C. Circuit has cautioned that limited discovery should not be conducted in the absence of sufficient allegations to rebut the certification because discovery is not a "fishing expedition for facts that *might* give rise to a viable scope-of-employment claim." Wuterich, 385 F.3d at 386 (emphasis in original).  However, given Rule 8's liberal pleading standards, Hicks' allegations that Winn and Kaufman misused internal complaint procedures and that Winn knowingly submitted a report with false information, if true, could demonstrate that the defendants were acting outside the scope of their employment by engaging in unauthorized acts not intended to serve the Senate.  Therefore, limited discovery on these issues is warranted.

II.  SOVEREIGN IMMUNITY

With the United States substituted for Kaufman and Winn for the assault and false imprisonment claims, Hicks acknowledges that the United States has not waived sovereign immunity for her assault and false imprisonment torts and that she is left without recourse.  (Pl.'s Opp'n at 3).  See also 28 U.S.C. § 2680(h)); Majano v. United States, 545 F. Supp. 2d 136, 147 (D.D.C. 2008) (stating that "no claim may be brought against the United States that arises out of an assault and battery unless the tort was committed by a federal investigative or law enforcement officer").  Because the FTCA's waiver of sovereign

immunity does not apply to Hicks' assault and false imprisonment claims, these claims will be dismissed for lack of subject matter jurisdiction.

### CONCLUSION AND ORDER

Because Hicks has not made sufficient allegations to allow a reasonable juror to conclude that the defendants' assault and restraint of her were outside the scope of their employment, the United States will be substituted for Winn and Kaufman as to the assault and false imprisonment claims. Because, as Hicks concedes, the FTCA does not waive sovereign immunity with respect to assault and false imprisonment, the defendants' motion to dismiss will be granted as to those claims. However, because Hicks has alleged sufficient facts disputing that Winn and Kaufman acted within the scope of their employment when they allegedly misused the Capitol Police internal complaint process, Hicks will be allowed limited discovery as to the intentional infliction of emotional distress claim. Accordingly, it is hereby

ORDERED that defendants' motion [12] to substitute the United States and dismiss Count IV for lack of subject matter jurisdiction will be GRANTED IN PART and DENIED IN PART. The United States is substituted for Winn and Kaufman as to the assault and false imprisonment claims, and these claims are dismissed. The requests to substitute the United States as to

-25-

the intentional infliction of emotional distress claim and to

dismiss that claim are denied without prejudice.  It is further

ORDERED that the parties confer and file by August 6, 2012 a

joint status report and proposed order reflecting a schedule

governing limited discovery on the issue of whether Winn and

Kaufman took actions incidental to conduct authorized by their

employer and whether they acted with intent to serve the Senate

when they participated in the Capitol Police's internal complaint

process.

SIGNED this 6th day of July, 2012.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge